IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

NICHOLAS STRICKLAND, *et al.*,                    *

    Plaintiffs,                                  *

v.                                               *    Case Number: 1:06-CV-00682-DRB

CHAMPION ENTERPRISES, INC., *et al.*,            *

    Defendants.                                  *

2006 NOV 17  A 11: 57

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## SUPPLEMENT TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEAL

    **COMES NOW**, Champion Enterprises, Inc. (hereinafter referred to as "CEI"), by and

through counsel of record, and in supplement to its Motion to Dismiss or, in the alternative,

Motion for Summary Judgment and Motion to Seal, states as follows:

    As additional support for the motion, CEI is submitting herewith excerpts from the

deposition of CEI's corporate representative, which is attached hereto as Exhibit "A" and made a

part hereof by reference, along with true and correct copies of a portion of the documents

produced by CEI, some of which were introduced during the deposition, which are attached

hereto collectively as Exhibit "B" and will be referenced herein by the Bates stamped

identification at the bottom right hand corner of the documents.[1]  Pursuant to Paragraph b of the

---

    1    Only documents containing Bates stamped numbers starting with
"STRIKLAND00001" and ending with "STRICKLAND00944" at the bottom right hand corner
of the document were produced in this matter.  However, several other documents were
introduced at the deposition of CEI's corporate representative and upon information and belief,
some of the documents were produced in another matter, *Guidroz v. Champion Enterprises, Inc.,
et al.,* pending in the United States District Court, Western District of Louisiana,
Lafayette/Opelousas Division, CV05-1148.  The documents produced in the *Guidroz* matter
were confidential and subject to a Protective Order (Doc. No. 23) stating that "[t]he use of
Confidential Information *shall be limited to the prosecution and defense of claims in this
litigation only* and shall not be disclosed to any other person or entity, or disseminated or

Order on Motion and Stipulated Protective Order-Confidentiality (Doc. No. 17), CEI hereby respectfully requests this Honorable Court order the documents attached as Exhibit A and Exhibit B hereto sealed. CEI is also attaching hereto as Exhibit "C", a true and correct copy of Plaintiff's Amended Responses to Defendant Champion Enterprises, Inc.'s Interrogatories and Request for Production of Documents to Plaintiffs (hereinafter referred to as "Plaintiff's Amended Responses").[2]

## UNDISPUTED FACTS

Documents containing Bates stamped numbers starting with "STRIKLAND00001" and ending with "STRICKLAND00944" at the bottom right hand corner of the document that were produced in this matter are business records kept in the normal course of business. (Ex. A, p. 11, 3-25; p. 12, 1-11). CEI was established in 1953, is now a stock holding company and owns one-hundred percent of the stock of Champion Home Builders Co. (hereinafter referred to as "CHB"), which is presently its only asset. (Ex. A, p. 16, 9-11; p. 41, 6-9; p. 43, 12-24). No manufacturing facilities operate under the name of CEI. (Ex. A, p. 48, 4-15). Until 2003 or 2004, CEI had some employees and also, directly owned other subsidiaries until around 2001 or 2002. (Ex. A, p. 40, 6-25; p. 41, 1-5; p. 50, 21-25; p. 51, 1-2). CEI and CHB have complied with corporate formalities. (Strickland00494-Strickland00504; Stickland00546-Strickland00618; Stickland00646-Strickland00661). While many officers of CHB and CEI are

---

distributed for any other purpose, unless otherwise ordered by the Court or with the written consent of CEI." (Emphasis added). CEI has not given any written consent for such documents to be used in other matters nor is it aware of an Order by the Court allowing such disclosure. It is respectfully submitted that the introduction of such documents in this matter during the deposition of CEI's corporate representative, or in response to any motion, may be in violation of said Protective Order. An objection was made to the use of any documents produced in *Guidroz* matter being used in other matters. (Ex. A, p. 20, 7-25; p. 21, 1-25; p. 22, 1-8). One such document was withdrawn. (Ex. A, p. 92, 6-11).

    2  As of the date of the filing of this pleading, the Plaintiffs have still not submitted signed responses as is required by the Federal Rules of Civil Procedure.

the same, the Board of Directors for each company is completely different, other than having the President and CEO of CEI on the Board of Directors for both CEI and CHB during some years. (Strickland00494-Strickland00504; Stickland00546-Strickland00618; Stickland00646-Strickland00651).

Pursuant to a Management Agreement between CEI and CHB and a Management Agreement between CHB and a non-party, Champion Enterprises Management Co. (hereinafter referred to as "CEM"), services are provided by or to CEI, CHB, and CEM in accordance with such agreements. (Ex. A, p. 38, 4-14; Strickland00665-Strickland00670). Such services include, but are not limited to, providing office space, office administration services, accounting and tax services, management information services, establishment and maintenance of computer networks, legal services and such other management or administrative services that are reasonably requested which can be provided. (See Strickland00667 and Strickland00670).

In accordance with SEC regulations, Sarbanes-Oxley requirements and other federal laws, CEI has formulated guidelines and other documents with regard to its operation. (Ex. A, p. 42, 16-25; p. 45, 21-25; p. 46, 1-25; p. 55, 2-7; p. 72, 2-25; p. 73, 1-12; Strickland00040-Strickland00074). While the guidelines and job descriptions specify on paper supervisory roles as well as the chain of command, and conceivably, a person higher in command can have authority to give directives, etc., that is not how things operate day to day. (Ex. A, p. 61, 14-25; p. 62, 1-25; p. 63, 1-7; p. 67, 12-25; p. 69, 1-25; p.70, 1-4). The day to day manufacturing decisions are not made by the CEO of CEI, but rather, by plant managers of the various plants. (Ex. A, p. 67, 12-18). Each of the plants has its own Design Approval Primary Inspection Agency ("DAPIA") that approves drawings and plans from each plant's separate engineering

department; further, each individual entity is responsible for its own actions. (Ex. A, p. 63, 14-25; p. 64, 1-24; p. 73, 20-25; p. 74, 1-16).

Although CEI is the registered domain owner of the website "championhomes.net" (or championhomes.com), it does not conduct any activity on the website; the website itself, all inputting, design and activity, are handled and controlled by Paul Paruji, an employee of a non-party, CEM. (Ex. A, p. 84, 1-10; p. 92, 15-25; p. 93, 1-4). The website is informational in nature and allows someone to view listings of homes produced by CHB or such other subsidiary of CHB in a particular area sold by independent retailers. (Ex. A, p. 80, 17-25; p. 81, 1-16). The independent retailers have entered into an agreement with CHB or one of CHB's subsidiaries, not CEI. (Ex. A, p. 82, 2-21).

## ARGUMENT

### I. Alter Ego.

"Piercing the corporate veil is not a power that is lightly exercised. The concept that a corporation is a legal entity existing separate and apart from its shareholders is well settled in this state." *Backus v. Watson*, 619 So.2d 1342, 1345 (Ala.1993); *citing Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So.2d 37 (Ala.1988). The essential elements necessary to support alter ego or piercing the corporate veil claims are as follows:

> (1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;
>
> 2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
>
> 3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*Messick v. Mooring,* 514 So.2d 892, 894-895 (Ala.1987), citing *Lowendahl v. Baltimore & O. Ry.,* 247 A.D. 144, 287 N.Y.S. 62 (1936).

"Mere domination or control of a corporation by its stockholder cannot be enough to allow a piercing of the corporate veil. **There must be the added elements of misuse of control and harm or loss resulting from it.**" *First Health, Inc. v. Blanton*, 585 So.2d 1331, 1335 (Ala.1991), citing *Simmons v. Clark Equipment Credit Corp.,* 554 So.2d 398 (Ala.1989); *Messick,* supra. (Emphasis added). Where the law recognizes one-man corporations, it is obvious that the law accepts the fact of domination by one person. *Backus v. Watson*, 619 So.2d at 1345; *citing* Ala. Code 1975, § § 10-2A-90, 10-2A-58, 10-2A-57; *Co-Ex Plastics, Inc. v. AlaPak, Inc., supra.*

The appropriate time in question would only be at the time the subject manufactured home was built. *See Messick v. Moring,* 514 So.2d 892, 894-895 (Ala. 1987); *see also Kwick Set Components Inc. v. Davidson Indus., Inc.,* 411 So.2d 134 (Ala. 1982). Since the manufactured home was built in 2003, plaintiff must produce sufficient admissible evidence in this applicable time period. All other evidence outside the time period is irrelevant and immaterial.

CEI has produced corporate records for both CEI and CHB during the relevant time period as well as other time periods evidencing compliance with corporate formalities. (Ex. B, Strickland00494-Strickland00504;    Stickland00546-Strickland00618;    Stickland00646-Strickland00661).[3] Thus, corporate formalities have been followed. Although CEI owns one-

---

3  It is anticipated plaintiffs may make an argument that CHB, in complying with corporate formalities, only prepared Consents in Lieu of Annual Meetings of the Shareholders of CHB. Research related to any distinction, for alter ego or piercing the corporate veil issues, with regard to Consents in Lieu of Annual Meetings being prepared instead of minutes from Annual Meetings did not reveal any case finding such Consents do not comply with corporate formalities. Indeed, it is respectfully submitted that when a corporation only has one shareholder, such as is the case with CHB, Consents in Lieu of Annual Meetings of shareholders

hundred percent of the stock of CHB, it does not control the day to day activities of CHB's

plants; such day to day operations are handled by the plant managers. (Ex. A, p. 67, 12-18).

Judge Cohen, in his opinion in *Aureus Internationa, Inc. v. Coala, Inc. (In re Coala),* 182

B.R. 887 (N.D.Ala. 1995) succinctly set forth case law with regard to total domination of a

subservient corporation as follows:

> Mere domination or control of a corporation by its stockholders is not however,
> enough to allow a piercing of the corporate veil.  **The stockholders must have
> misused that control and harm or loss must have resulted from it.** [footnote
> omitted].  It is typical for the majority stockholders to control the operation of a
> closely held corporation.  The fact that majority stockholders control the business
> of the corporation does not make that corporation a sham. [footnote omitted].  The
> law, in fact, recognizes one-person corporations and accepts the fact of
> domination by one person. [footnote omitted].  **Therefore, in order to justify
> piercing the veil of corporate existence, it is not enough to show that the
> corporation may have been controlled by one or a few persons.** [footnote
> omitted].  In the absence of fraud or inequity, the shareholders will be protected
> from individual liability by the corporate entity, even though the corporation is
> controlled by the shareholders. [footnote omitted].  In order to pierce the
> corporate veil, the complaining party must show not only that the dominant party
> has complete control and domination of the subservient corporation's finances,
> policy, and business practices but also that it misused that control to his detriment.
> [footnote omitted].  If the stockholders dominated the subservient corporation,
> and were guilty of fraud in asserting the corporate existence, or if recognition of
> the corporate existence will result in injustice or inequitable consequences, the
> corporate veil may be pierced. [footnote omitted].  If the corporation has been
> organized solely by stockholders to avoid personal liability and used by the
> stockholders for their personal purpose, subversive to the rights of others, the
> corporate veil can be pierced to impose personal liability on the stockholders.
> [footnote omitted].
>
> The following factors are generally considered when determining whether the
> corporate form may be disregarded:  (1) inadequacy of capital;  (2) fraudulent
> purpose in conception or operation of the business;  or (3) operation of the
> corporation as an instrumentality or alter ego. [footnote omitted].  The last
> mentioned factor, domination of the subservient corporation, is indicated "where a
> corporation is set up as a subterfuge, where shareholders do not observe the
> corporate form, where the legal requirements of corporate law are not complied
> with, where the corporation maintains no corporate records, where the corporation

---

are common.  In any instance, *Code of Alabama (1975)* § 10-2B-7.04 expressly allows such
consents.

maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation." *Backus v. Watson*, 619 So.2d 1342, 1345 (Ala.1993), quoting *Simmons v. Clark Equipment Credit Corp.*, 554 So.2d 398, 400-401 (Ala.1989). None of these factors are present in the instant case.

*Aureus Internationa, Inc. v. Coala, Inc. (In re Coala),* 182 B.R. 894-896. (Emphasis added).

**Capitalization.**

"A corporation that was adequately capitalized when formed but later suffers financial reverses is not undercapitalized. *U.S. v. Fidelity Capital Corp.*, 920 F.2d 827, 839 (11th Cir. 1991); see also 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 44.1, at 529 (rev. perm. Ed. 1983). Presently, CEI's sole asset is one hundred percent ownership of CHB. (Ex. A, p. 16, 9-11; p. 41, 6-9; p. 43, 22-24). CEI was formed in 1953 and directly owned other subsidiaries until around 2001 or 2002. (Ex. A, p. 43, 12-21; p. 50, 21-25; p. 51, 1-2). There is no evidence that CEI was undercapitalized when it was incorporated in 1953. As was noted in *Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So.2d at 39, the Supreme Court of Alabama held in *East End Memorial Ass'n v. Egerman* 514 So.2d 38 (Ala.1987), that "a party who has contracted with a financially weak corporation and is disappointed in obtaining satisfaction of his claim cannot look to the dominant stockholder or parent corporation in the absence of additional compelling facts." 514 So.2d at 44, quoting *Tigrett v. Pointer,* 580 S.W.2d 375, 382 (Tex.Civ.App.1978).

**Fraudulent Purpose in Conception or Operation.**

There is no evidence in this case to support any allegation that CEI or CHB was formed for any fraudulent purpose or operated for a fraudulent purpose. CEI is a stock holding company and CHB and its subsidiaries manufacture homes on an on-going basis. It is anticipated that Strickland may allege that the CEO of CEI signed a contract in 2005 on behalf of CHB. It is

respectfully submitted that such action that occurred two (2) years outside of the relevant time period is irrelevant and immaterial with regard to this case, especially since the contract had nothing to do with the transaction in this case.[4]  In any event, even if there was a showing that CEI or any subsidiary failed to comply with all corporate formalities, such a showing would not be sufficient to pierce the corporate veil.  A failure to follow minor corporate formalities is not sufficient to invoke the lowering of the protective corporate shell.  *Alfa Mutual Fire Ins. Co. v. Memory,* 185 B.R. 985, 993 (M.D.Ala. 1995); *See also Co-Ex Plastics Inc. v. AlaPak, Inc.*, 536 So.2d 37, 39 (Ala.1988).

In *U.S. v. Fidelity Capital Corp.,* the Eleventh Circuit found that Fidelity and American had the same telephone number, shared offices, stationery, and employees, filed consolidated tax returns and that pursuant to a management agreement, American managed Fidelity.  Similarly in this case, CEI and CHB share home office space in one particular office in Auburn Hills, Michigan (CHB has many other offices in plants across the United States where it handles its day to day activities), file consolidated tax returns (although they have separate Tax I.D. Nos.) and pursuant to a Management Agreement, different functions are handled by or for CEI or CHB. (Ex. A, p. 36, 13-18; Ex. A to Motion to Dismiss or, in the alternative, Motion for Summary Judgment; Strickland00665-Strickland00670).  Such factors, without other evidence of abuse, are not sufficient to pierce the corporate veil.  *See U.S. v. Fidelity Capital Corp.,* 920 F.2d at 840; *see also Trans-American Communications v. Nolle,* 214 S.E.2d 717 (1975) (a holding company and its wholly owned subsidiary may be separate entities even though they share the same offices and bookkeeping facilities and trade information and employees); *Memory v. Alfa*

---

4  It is respectfully submitted that this one transaction out of approximately 1,000 pages of documents produced fails to support any claim of misuse of control.  *See Messick v. Moring,* 514 So.2d at 895 (plaintiff's questioning of only two (2) transactions out of nearly 2,000 pages of corporate records insufficient to establish misuse of control of corporations).

*Mutual Fire Ins. Co. (In re Martin),* 205 B.R. 646, 649 (M.D.Ala. 1993) (businesses operated out of same address with the same telephone number and employed some of the same people; but separate bank accounts, tax EID nos. and tax returns; facts did not support alter ego theory).

### Operation of the Corporation as an Instrumentality or Alter Ego.

"[T]wo elements are essential for liability under the ['] instrumentality ['] doctrine. First, the dominant corporation must have controlled the subservient corporation, and second, the dominant corporation must have proximately caused plaintiff harm through misuse of this control." *Krivo Industrial Supply Co. v. Nat'l Distillers and Chemical Corp.,* 483 F.2d 1098, 1103 (5th Cir. 1973);[5] *citing Berger v. Columbia Broadcasting System, Inc.,* 453 F.2d 991 (5th Cir.), *cert. denied,* 409 U. S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972) (applying New York law); *see also National Bond Finance Co. v. General Motors Corp.,* 238 F.Supp. 248 (W.D.Mo. 1964), aff'd, 341 F.2d 1022 (8th Cir. 1965); *Huski-Bilt, Inc. v. First-Citizens Bank & Trust Co.,* 271 N.C. 662, 157 S. E.2d 352 (1967). Even when the corporation appears to be an alter ego, in order to pierce the corporate veil, "[t]here must be the added elements of misuse of control and harm or loss resulting from it." *South Alabama Pigs, LLC v. Farmer Feeders, Inc.,* 305 F.Supp.2d 1252, 1258 (M.D.Ala. 2004); *citing Backus v. Watson,* 619 So.2d 1342, 1345 (Ala.1993); *see also Messick v. Moring,* 514 So.2d 892, 894-95 (Ala.1987).

In discussing factors to consider when piercing the corporate veil on an alter ego theory, the standard for piercing the corporate veil between a parent company and its subsidiaries should be considered, rather than the standard in cases of individually owned corporations. *See South Alabama Pigs, LLC v. Farmer Feeders, Inc.,* 305 F.Supp.2d 1252, 1258 (M.D.Ala. 2004) [FN1].

---

5  In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Based on the foregoing, cases involving individually owned corporations should not be considered in this matter as we are dealing with a parent corporation and subsidiaries.

In *Ex parte Baker*, 432 So.2d 1281 (Ala. 1983), the Supreme Court of Alabama had an opportunity to review a case involving similar alter ego allegations which are alleged in this matter. In *Ex parte Baker*, Hospital Corporation of America ("HCA") was a holding company that owned a number of subsidiary corporations engaged in various businesses related to the delivery of health care services. *Ex parte Baker*, 432 So.2d at 1282. Likewise in this case, CEI is a holding company that owns a subsidiary corporation which in turn owns a number of corporations engaged in various businesses, some of which are related to the manufactured home industry. In *Ex parte Baker*, the Supreme Court of Alabama specifically found that "[a] parent corporation which owns all the stock of a subsidiary corporation is not liable for the acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation." *Ex parte Baker*, 432 So.2d at 1284; *citing Birmingham Realty v. Crossett,* 210 Ala. 650, 98 So. 895 (1923); *Krivo Industrial Supply Co. v. Nat'l Distillers and Chemical Corp.*, 483 F.2d 1098 (5th Cir. 1973);[6] *see also Nobles v. Rural Community Ins. Serv.*, 303 R.Supp.2d 1279, 1288 (M.D.Ala. 2004).

Additional facts set forth in *Ex parte Baker*, which are similar to the facts of this case, are as follows:

> Most of HCA's subsidiary corporations own and operate hospitals located throughout the United States and foreign countries. Each hospital owned by a subsidiary of HCA is operated under local control by an administrator and a board

---

6 Alternatively, to the extent any claims in the complaint are interpreted to assert that CEI had some duty to control its subsidiaries, under Alabama law, the "duty to control" doctrine cannot be applied to hold a parent corporation liable for the acts of its subsidiary. *Underwood v. Armstrong World Industries, Inc.,* 619 So.2d 1360, 1362-1363 (Ala. 1993).

of trustees who reside in the community where the hospital is located.    GCC, d/b/a Woodland Community Hospital, is an example of such a subsidiary/hospital.

HCA owns, directly or indirectly, the stock of two subsidiary corporations whose sole business is providing management consulting services for hospitals not owned by HCA or any of its affiliates (the "management subsidiaries"). Hospital Affiliates Management Corporation (HAMC) is one of these two management subsidiaries.    It has a contract to provide management consulting services at South Highlands Hospital, in Birmingham, and, consequently, does business in Jefferson County.    HCA acquired HAMC by a merger in 1981.    HAMC had its management contract with South Highlands prior to the merger.

HAMC has three directors, all of whom are officers of HCA.  None, however, is involved in HCA's day-to-day operations.  There are also several individuals who perform staff functions, such as corporate counsel, and corporate secretary and treasurer for all subsidiary corporations owned by HCA, including HAMC; but they are removed from the actual operations of any subsidiary.  **The only aspects of commonality identified among the HCA subsidiaries relate to administrative matters, such as a centralized payroll, and to financial reporting, which is necessary to comply with regulations of the Securities and Exchange Commission and the New York Stock Exchange.**

The officers and employees who manage the operations of HAMC are not employees of HCA, and have no duties with HCA.  HCA does not sign or in any manner guarantee performance by HAMC under its management contracts.

HAMC operated independently of HCA for the years prior to the time HCA acquired the stock of HAMC through merger of HAMC's parent, Hospital Affiliates International, Inc., with an HCA subsidiary in August, 1981.

*Ex parte Baker,* 432 So.2d at 1282-1283.  (Emphasis added).

The Supreme Court of Alabama determined that such activity was not sufficient to allow

the piercing of the corporate veil and found no error by the trial court in dismissing HCA. *Ex*

*parte Baker,* 432 So.2d at1285.   In this case, it is expected that Strickland will claim that

documents, such as the Corporate Governance Guidelines and job descriptions are evidence of

improper control.    (Strickland00040-Strickland00074).    To the contrary, such items are

necessary, just as in *Ex parte Baker,* to comply with SEC regulations, the New York Stock

Exchange and more specifically, the Sarbanes-Oxley Act of 2002 (hereinafter referred to as

11

"Sarbanes-Oxley Act").  Section 302 of the Sarbanes-Oxley Act mandates a set of internal procedures designed to ensure accurate financial disclosure.  The CEO and CFO of a publicly traded companies must certify that they are "responsible for establishing and maintaining internal controls" and "have designed such internal controls to ensure that material information relating to the company and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the periodic reports are being prepared." 15 U.S.C. § 7241(a)(4).  Said officers must "have evaluated the effectiveness of the company's internal controls as of a date within 90 days prior to the report" and "have presented in the report their conclusions about the effectiveness of their internal controls based on their evaluation as of that date." *Id.*

In addition, Section 404 of the Sarbanes-Oxley Act requires management to produce an "internal control report" as part of each annual Exchange Act report. See 15 U.S.C. § 7262.  The report must affirm "the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting." 15 U.S.C. § 7262(a). The report must also "contain an assessment, as of the end of the most recent fiscal year of the Company, of the effectiveness of the internal control structure and procedures of the issuer for financial reporting." *Id.*  Such action, in compliance with Sarbanes-Oxley, has been taken by CEI.  (Ex. A, p. 42, 16-25; p. 45, 21-25, p. 46, 1-25; p. 55, 2-7; p. 72, 2-25, p. 73, 1-12; Strickland00040-Strickland00074).

**Proximate Cause of Plaintiffs' Injuries.**

Even if some alter ego factors are present, the plaintiffs must still present evidence to establish that the misuse of control was the proximate cause of the plaintiff's injuries. *First Health, Inc. v. Blanton*, 585 So.2d 1331, 1335 (Ala.1991), citing *Simmons v. Clark Equipment*

12

*Credit Corp.*, 554 So.2d 398 (Ala.1989); *Messick,* supra.  No such evidence has been submitted. (See Ex. C, Plaintiff's Amended Response to Interrogatory No. 2.)

## II.    Personal Jurisdiction.

"Where a district court in its discretion decides a personal jurisdiction issue without an evidentiary hearing, it is the plaintiff's burden to establish a prima facie case of personal jurisdiction over a nonresident defendant."  *Homebingo Network, Inc. v. Chayevsky,* 428 F.Supp.2d 1232, 1240-1241 (S.D.Ala. 2006); *citing Electronics for Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed.Cir.2003);  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir.2002).  In *Chayevsky,* the two types of personal jurisdiction, general and specific, were discussed as follows:

> There are two types of personal jurisdiction:  general and specific.  General personal jurisdiction arises "when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts."  *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279 (Fed.Cir.2005) (citations omitted);  *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1200 (Fed.Cir.2003) . . .  Specific jurisdiction is proper, even if a defendant's contacts with the forum state are "isolated and sporadic," so long as such activities arise out of or relate to the cause of action.  See *Trintec*, 395 F.3d at 1279; *Silent Drive*, 326 F.3d at 1200.
>
> When a defendant challenges specific personal jurisdiction in a federal question case, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with the forum state's long-arm provision, as well as the strictures of the due-process clause of the Fifth Amendment to the United States Constitution.  See *Trintec*, 395 F.3d at 1279;  *Silent Drive*, 326 F.3d at 1200-01;  *Deprenyl [Animal Health, Inc. v. University of Toronto Innovations Foundation,* 297 F.3d 1343, 1349-50 (Fed.Cir. 2002)].  In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause.  See *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir.2000);  *Lasalle Bank N.A. v. Mobile Hotel Properties*, LLC, 274 F.Supp.2d 1293, 1296 (S.D.Ala.2003). Where, as here, the reach of the state long-arm statute is coextensive with the limits of due process, "these two inquiries coalesce into one." *Trintec*, 395 F.3d at 1279. . .

> Due process authorizes the exercise of personal jurisdiction when both (1) the nonresident defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. See *Deprenyl*, 297 F.3d at 1350-51.

*Homebingo Network, Inc. v. Chayevsky,* 428 F.Supp.2d at 1241-1242.

The Eleventh Circuit has recognized that the requirements for satisfying general jurisdiction are more stringent than those of specific jurisdiction as continuous and systematic contacts with the forum state must be shown. *Consolidated Dev. Corp. v. Sherrit, Inc.*, 216 F.3d 1289, 1292 (11th Cir. 2000). There has been no showing of "continuous and systematic contacts" by CEI in Alabama.

Specific jurisdiction has further been analyzed as follows:

> "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consolidated Dev. Corp.*[ *v. Sherrit, Inc.*, 216 F.3d 1289, 1291 (11th Cir. 2000)]. It must be shown that Defendants purposefully availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* The "purposeful availment" standard prevents personal jurisdiction based on "random" or "fortuitous" contacts. *Burger King* [*Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)]. Rather, defendants must have "deliberately . . . engaged in significant activities within a State." *Id.* at 475-76.

*Peacock v. Merrill,* 2005 WL 2233466 (S.D.Ala. Sept. 14 2005).

There is absolutely no evidence that any CEI representative was involved in the manufacture, design, sale, or service of the manufactured home. (See Ex. C, Plaintiff's Amended Response to Interrogatory No. 1). It is expected that Strickland will claim that since CEI is the registered domain owner of championhomes.net, the personal jurisdictional requirement has been met. Case law, however, suggests otherwise.

In June of this year, Judge Albritton had an opportunity to review a personal jurisdiction question involving a website. In *Thomas v. Mitsubishi Motor North America, Inc.,* 436

F.Supp.2d 1250 (M.D.Ala. 2006), a transaction to purchase a vehicle was commenced and completed in Union City, Georgia; two days later, an individual in the vehicle was killed in an accident in Lowndes County, Alabama. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1252. Suit was filed in Lowndes County, Alabama, which was removed to federal court and a motion to dismiss was filed by the dealership alleging the court lacked personal jurisdiction, that the dealership did not conduct business in Alabama, did not have agents or offices in Alabama, that no purchasers of vehicles had taken delivery in Alabama and the dealership did not advertise or solicit business in Alabama. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1251-1252. In response, the plaintiff, through counsel, asserted personal jurisdiction existed based on following electronic evidence:

> The Plaintiff argues that it is clear that *in personam* jurisdiction exists over Don Jackson in Alabama in this case, based in part on evidence of electronic mail correspondence between Plaintiff's counsel and Don Jackson, which Plaintiff's counsel initiated pursuant to Don Jackson's website. Several weeks after the fatal accident, the Plaintiff's attorney corresponded by e-mail with Don Jackson and inquired about purchasing a specific vehicle. The purported email from Don Jackson responds that the dealership regularly ships cars out to other states. The Plaintiff asserts that the negotiations to purchase a car demonstrate that *in personam* jurisdiction exists because the representative from Don Jackson said that it ships cars to many different states. The Plaintiff also argues that it can be inferred from the Defendants' evidence that Don Jackson has sold vehicles to Alabama citizens in the past.

*Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1253.

It was determined that the email and purported previous sales did not involve the transaction between the owner of the subject vehicle and the dealer, no evidence was submitted that any aspect of the transaction between the parties occurred in Alabama and the email and website evidence did not concern the transaction between the purchaser and dealer, but rather, involved plaintiff's counsel and transpired after the accident; thus, such information was

15

insufficient to establish specific or general jurisdiction. *Thomas v. Mitsubishi Motor North America, Inc.,* 436 F.Supp.2d at 1253-56.

In reaching the above determination, it was noted that the Northern District of Alabama in *Butler v. Beer Across America*, 83 F.Supp.2d 1261 (N.D.Ala. 2000) adopted a model for analyzing websites as minimum contacts described in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997), which essentially is as follows:

> The Zippo model is based on a sliding scale analysis. At one end, jurisdiction is created when there are knowing and repeated transmissions of computer files over the internet. See *Butler*, 83 F.Supp.2d at 1266. At the other end, personal jurisdiction is improper where the defendant's internet site is passive, and consists of little more than an electronic billboard. *Id.* In between these extremes are websites which allow for exchange of information. *Id.*

*Thomas v. Mitsubishi Motor North America, Inc.,* 436 F.Supp.2d [FN1].

In this case, CEI's activity is clearly passive, as it is merely the owner of the domain; CEI does not conduct any activity on the website as such activity is exclusively handled by CEM. (Ex. A, p. 84, 1-10; p. 92, 15-25; p. 93, 1-4). The website is informational in nature and allows someone to view listings of homes produced by CHB or such other subsidiary of CHB in a particular area sold by independent retailers. (Ex. A, p. 80, 17-25; p. 81, 1-16). At best, CEM (and not CEI) gives referrals to independent dealers. The independent retailers have entered into an agreement with CHB or one of CHB's subsidiaries, not CEI. (Ex. A, p. 82, 2-21). No sales are made over the internet.

There is absolutely no evidence to establish that the transaction in question took place over the internet or to show that CEI was involved. In other words, the website is not a contact with the forum state related to the cause of action. *See Thomas v. Mitsubishi Motor North America, Inc.,* 436 F.Supp.2d at 1254; *citing Helicopteros Nacionales de Colombia, S.A. v. Hall,*

466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Therefore, specific jurisdiction cannot be shown.

With regard to general jurisdiction, it was determined that while the *Zippo* analysis was helpful in some circumstances, it is not determinative of the general personal jurisdictional inquiry. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1255. In *Thomas*, the reasoning in *Butler* was found to be persuasive, which is more particularly set forth below:

> The court is persuaded that the reasoning of *Butler* applies in this case. At most, there is evidence in this case that some sales of automobiles to Alabama residents could have occurred in the past. This is certainly less compelling evidence than that in *Butler* where there was actual evidence of sales to Alabama citizens via the internet. Even assuming without deciding that the website in this case lies somewhere in the middle of the *Zippo* interactivity spectrum, given the lack of evidence regarding the quantity of internet contact by Alabama citizens, and in view of the Defendants' uncontroverted evidence, including but not limited to, that Don Jackson has no agent in Alabama, owns no property in the state, sells no cars in Alabama, has not delivered cars to Alabama, and does not advertise in Alabama, the court concludes that the contacts identified by the Plaintiff are not sufficient to establish general personal jurisdiction over Don Jackson in Alabama.

*Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1255-1256.

In this case, it is clear that CEI did not sell the home to Strickland over the internet, has no agents or offices in Alabama, does not operate or run the internet site, owns no property in the state, does not sell anything into Alabama, has not delivered anything into Alabama, and does not advertise in Alabama. (Ex. A, p. 84, 1-10; p. 92, 15-25; p. 93, 1-4; Ex. A to Motion to Dismiss or, in the alternative, Motion for Summary Judgment). Therefore, there is insufficient evidence to establish general personal jurisdiction.

**WHEREFORE PREMISES CONSIDERED**, CEI prays that it be dismissed as a party defendant or alternatively, for a summary judgment in its favor, that Exhibits A and B will be sealed in accordance with the Order on Motion and Stipulated Protective Order-Confidentiality (Doc. No. 17) and for such other, further and different relief as may be just.

Respectfully submitted,

RITCHEY & RITCHEY, P.A.

_____
Gregory S. Ritchey, Esquire {ASB-8195-H68G}
Richard S. Walker, Esquire {ASB-8719-L70R}
Counsel for Champion Home Builders Co.
and Champion Enterprises, Inc.

**OF COUNSEL:**
**RITCHEY & RITCHEY, P.A.**
P.O. Drawer 590069
Birmingham, Alabama 35259-0069
Direct Dial:    205.271.3105
Facsimile:      205.271.3111

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been served upon the following:

Jere L. Beasley, Esquire
W. Daniel Miles, III, Esquire
C. Gibson Vance, Esquire
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL  36103

by placing a copy of same in the United States Mail, postage prepaid, on this the ____ day of
_____, 2006.

OF COUNSEL

18

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS STRICKLAND, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| | *     Case Number: 1:06-CV-00682-DRB |
| v. | * |
| | * |
| CHAMPION ENTERPRISES, INC., *et al.*, | * |
| | * |
| Defendants. | * |

## INDEX OF CONFIDENTIAL EXHIBITS

| | | |
|---|---|---|
| Exhibit A | | Excerpts from deposition David N. Goltz, Esquire, Corporate Representative of Champion Enterprises, Inc. |
| Exhibit B | | |
| | Strickland00040 – Strickland00053 | Champion Enterprises, Inc. Corporate Governance Guidelines |
| | Strickland00054 – Strickland00058 | Champion Enterprises, Inc. CEO Job Description |
| | Strickland00059 – Strickland00063 | Champion Enterprises, Inc. President of Manufacturing, Job Description |
| | Strickland00064 – Strickland00068 | Champion Enterprises, Inc. President of Manufacturing – Southern Region, Job Description |
| | Strickland00069 – Strickland00073 | Champion Enterprises, Inc. General Manager Job Description |
| | Strickland00074 | Champion Enterprises, Inc. Delegation of Authority |
| | Strickland00494 – Strickland00497 | Consent in Lieu of Annual Meeting of the Shareholders of Champion Home Builders Co. dated May 3, 2006 |
| | Strickland00498 – Strickland00499 | Consent in Lieu of Annual Meeting of the Shareholders of Champion Home Builders Co. dated January 22, 2003 |

| | |
|---|---|
| Strickland00500 – Strickland00502 | Consent in Lieu of Annual Meeting of the Shareholders of Champion Home Builders Co. dated April 30, 2002 |
| Strickland00503 | Consent in Lieu of Annual Meeting of the Shareholders of Champion Home Builders Co. dated April 30, 2002 |
| Strickland00504 | Champion Enterprises, Inc. Directors and Officers from 1986 - 2005 |
| Strickland00546 – Strickland00549 | Champion Enterprises, Inc. Minutes of the Regular Meeting of the Board of Directors dated October 25, 2005 |
| Strickland00550 – Strickland00557 | Champion Enterprises, Inc. Minutes of the Regular Meeting of the Board of Directors dated May 3, 2006 |
| Strickland00558 – Strickland00564 | Champion Enterprises, Inc. Minutes of the Annual Meeting of the Board of Directors dated May 3, 2005 |
| Strickland00565 – Strickland00572 | Champion Enterprises, Inc. Minutes of the Annual Meeting of the Board of Directors dated April 27, 2004 |
| Strickland00573 – Strickland00582 | Champion Enterprises, Inc. Minutes of the Annual Meeting of the Board of Directors dated April 29, 2003 |
| Strickland00583 – Strickland00590 | Champion Enterprises, Inc. Minutes of the Regular Meeting of the Board of Directors dated April 30, 2002 |
| Strickland00591 – Strickland00618 | Champion Enterprises, Inc. Notice of 2002 Annual Meeting of Shareholders and Proxy Statement |
| Strickland00646 – Strickland00651 | Champion Enterprises, Inc. Minutes of the Regular Meeting of the Board of Directors dated July 25, 2000 |
| Strickland00665 – Strickland00667 | Management and Administrative Services Agreement between Champion Enterprises, Inc., and Champion Enterprises Management Co. |

Strickland00668 –
Strickland00670

Management and Administrative Services
Agreement between Champion Enterprises
Management Co., and Champion Home Builders
Co.

Exhibit C

Plaintiff's Amended Response to Defendant
Champion Enterprises, Inc.'s Interrogatories and
Request for Production of Documents to Plaintiffs

3



IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

NICHOLAS STRICKLAND, et al.,          *
                                      *
        Plaintiffs,                   *
                                      *    Case Number: 1:06-CV-682
v.                                    *
                                      *
CHAMPION ENTERPRISES, INC., et al.    *
                                      *
        Defendants.                   *

## PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT CHAMPION ENTERPRISES, INC.'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS

Plaintiffs Nick and Jennifer Strickland hereby file their amended Responses to Defendant Champion Enterprises, Inc.'s Limited Interrogatories and Request for Production of Documents as follows.

### General Objections

1.      The objections to the pending discovery made by Plaintiff are made without waiver of, or prejudice to, additional objections that Plaintiff may make. All such objections are hereby expressly preserved, as is the right to move for a protective order. Plaintiff also reserves all objections to the admissibility at trial of any information provided.

2.      Plaintiff objects to the discovery to the extent each interrogatory and request for production has absolutely no relevance to the proceedings before the Middle District of Alabama and is not calculated to lead to the discovery of admissible evidence.

3.     The supplying of any information does not constitute an admission by Plaintiff that such information is relevant in this action.   All information provided by Plaintiff is for use in this litigation only; that is, to be used for no other purpose.

4.     Plaintiff objects to each and every discovery request to the extent the documents or information called for, if any, are privileged.   In particular, Plaintiff objects to each and every discovery request to the extent the documents or information called for, if any, are protected by the attorney-client privilege and/or work product doctrine.  Plaintiff also states that any inadvertent production or disclosure of privileged material is not intended, or should not be construed, as a waiver of privilege, and Plaintiff reserves the right to seek the return of any such material and, further, to object to its use.

5.     Plaintiff objects to each and every discovery request to the extent it seeks to vary the obligations imposed upon Plaintiff under the Alabama Rules of Civil Procedure.

6.     Plaintiff objects to each and every discovery request to the extent it is vague, ambiguous, overly broad, oppressive, unduly burdensome, or unduly expensive.

7.     Plaintiff objects to each and every discovery request to the extent it seeks confidential or proprietary information.  Similarly, Plaintiff reserves the right to redact confidential or proprietary information from any document that is produced.

8.      Any production to occur at a later date will occur at a mutually convenient time and place.

## INTERROGATORIES

1.      Please "identify" everything you claim supports the contention that CEI designed, supplied, sold or manufactured the Manufactured Home.

**RESPONSE:**

**A).     All documents produced by defendants in this matter.   Bate stamped Brown R00001-R00944; Allen A00001-A00947; Ford 00001-00947; Allen J 00001-J00944; Deese 00001-00944; and Strickland 00001-00944.**

**B).     All documents that are exhibits to the deposition of David Goltz taken in this matter.**

**C).     All 10-K's and Annual Statements for Champion Enterprises for the last ten years.**

2.      Please "identify" everything you claim supports your contention that CEI "is the parent corporation and/or alter ego of Defendant Champion Home Builders, Co." as alleged in the Complaint.

**RESPONSE:**

**A).     All documents produced by defendants in this matter.   Bate stamped Brown R00001-R00944; Allen A00001-A00947; Ford 00001-00947; Allen J 00001-J00944; Deese 00001-00944; and Strickland 00001-00944.**

**B).     All documents that are exhibits to the deposition of David Goltz taken in this matter.**

3

C).    All 10-K's and Annual Statements for Champion Enterprises for the last ten years.

3.    Please "identify" everything you claim supports the contention that CEI and Champion Home Builders Co. are not separate and distinct corporations.

**RESPONSE:**

A).    **All documents produced by defendants in this matter.  Bate stamped Brown R00001-R00944; Allen A00001-A00947; Ford 00001-00947; Allen J 00001-J00944; Deese 00001-00944; and Strickland 00001-00944.**

B).    **All documents that are exhibits to the deposition of David Goltz taken in this matter.**

C).    **All 10-K's and Annual Statements for Champion Enterprises for the last ten years.**

4.    Please "identify" each document referred to by you in preparing to answer or in answering these interrogatories.

**RESPONSE:**

A).    **All documents produced by defendants in this matter.  Bate stamped Brown R00001-R00944; Allen A00001-A00947; Ford 00001-00947; Allen J 00001-J00944; Deese 00001-00944; and Strickland 00001-00944.**

B).    **All documents that are exhibits to the deposition of David Goltz taken in this matter.**

C).    **All 10-K's and Annual Statements for Champion Enterprises for the last ten years.**

4

_____

Nicholas Strickland

**Sworn to and subscribed before me on this** _____ **day of** _____, **2006.**

_____

NOTARY PUBLIC
My Commission Expires:

_____

Jennifer Strickland

**Sworn to and subscribed before me on this** _____ **day of** _____, **2006.**

_____

NOTARY PUBLIC
My Commission Expires:

5

## FIRST REQUEST FOR PRODUCTION

1.     All "documents" or "communications" that came with the Manufactured Home or was received from CEI of or concerning the Manufactured Home, including, but not limited to warranties, service manuals, owner's manuals, set up instructions, repair records, correspondence, etc.

**RESPONSE:**          **Plaintiffs are producing all documents in their possession.**

2.     All "documents" or "communications" concerning the Manufactured Home transmitted or delivered by you, or by anyone acting on your behalf, to CEI.

**RESPONSE:**          **Plaintiffs are producing all documents in their possession.**

3.     All "documents" or "communications" you claim supports the contention that CEI designed, supplied, sold or manufactured the Manufactured Home.

**RESPONSE:**          **See response to Interrogatory #1.**

4.     All "documents" or "communications" you claim supports the contention that CEI "is the parent corporation and/or alter ego of Defendant Champion Home Builders, Co." as alleged in the Complaint.

**RESPONSE:**          **See response to Interrogatory #2.**

5.     All "documents" or "communications" you claim supports any contention that CEI and Champion Home Builders Co. are not separate and distinct corporations.

6

**RESPONSE:**       **See Response to Interrogatory #3.**

6.    All "documents" or "communications" evidencing any warranties you claim you were given by CEI in regard to the Manufactured Home.

**RESPONSE:**       **Plaintiffs are producing all documents in their possession.**



_C. 3()_
_____
C. Gibson Vance (ASB-1923-N77C)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing document upon all counsel of record as listed below by placing the same in the United States mail, properly addressed and first class postage prepaid on this the 6th day of November, 2006.

Gregory S. Ritchey, Esquire
Richard S. Walker, Esquire
Ritchey & Ritchey, P.A.
P.O. Drawer 590069
Birmingham, Alabama 35259-0069
greg@ritcheylaw.com
richard@ritcheylaw.com


_____
OF COUNSEL

**PALM HARBOR HOME CENTER**
6125 MONTGOMERY HIGHWAY
Dothan, Alabama 36303

334-983-1971   toll free 1-877-922-PALM   Fax 334-983-8201

IN THIS CONTRACT THE WORDS, I, ME, AND MY REFER TO THE BUYER AND CO-BUYER SIGNING THIS CONTRACT. THE WORDS YOU AND YOUR REFER TO THE DEALER.
Subject to the terms and conditions on both pages of this agreement you agree to sell and I agree to purchase the following described unit.

| BUYER(S) | PHONE | DATE |
|---|---|---|
| NICK L STRICKLAND AND JENNIFER J HUNT | (334) 794-6168 | 3/11/03 |

| ADDRESS | | SALESPERSON |
|---|---|---|
| 272 BLUFFSPRING RD—COWARTS AL 36321 | | VAN THOMASON |

DELIVERY ADDRESS
272 BLUFFSPRING RD—COWARTS AL 36321

MAKE & MODEL
CHAMPION ADVANTAGE—AV621

| YEAR | BD RMS | FLOOR | HITCH SIZE | STOCK OR SPECIAL ORDER |
|---|---|---|---|---|
| 2003 | 3 | L 76 w 16 | 80 w 16 | SO |

| NEW OR USED | COLOR | PROPOSED DELIVERY | STOCK NUMBER |
|---|---|---|---|
| NEW | WHITE | ASAP | 20916 |

SERIAL NUMBER
011-03-621-20853

| LOCATION | R-VALUE | THICKNESS | TYPE OF INSULATION |
|---|---|---|---|
| CEILING | 22 | 5.95 | CELLULOSE |
| EXTERIOR | 11 | 3.5 | FIBERGLASS |
| FLOORS | 11 | 3.5 | FIBERGLASS |

THIS INSULATION INFORMATION WAS FURNISHED BY THE MANUFACTURER AND IS DISCLOSED IN COMPLIANCE WITH THE FEDERAL TRADE COMMISSION RULE 16CRF, SECTION 460.16.

**OPTIONAL EQUIPMENT, LABOR AND ACCESSORIES**

DELIVERY
SET UP
TIE DOWNS
A/C INSTALLED
SKIRTING INSTALLED
STEPS
WASHER + DRYER

INTERTHERM FURNACE—E2E030201620
GE RANGE—TD280740P
GE SxS REFRIGERATOR—AF211207
GE DISHWASHER—AFB27610B
GE MICROWAVE—VD9210655
HUD LABEL—PFS799699

BALANCE CARRIED TO IMPROVEMENTS AND/OR ACCESSORIES

NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON PAGE 2 OF THIS AGREEMENT

| DESCRIPTION OF TRADE-IN    N/A | | YEAR | SIZE |
|---|---|---|---|
| MAKE | MODEL | | BEDROOMS |
| SERIAL NO | | | COLOR |

AMOUNT OWING TO WHOM

ANY DEBT I OWE ON THE TRADE-IN IS TO BE PAID BY   PALM HARBOR   ME xx

This agreement contains the entire understanding between YOU and ME, and no other representation or inducement verbal or written, has been made which is not contained in this contract.

| | BASE PRICE OF UNIT | $ 28,250.00 |
|---|---|---|
| Improvements and/or accessories | | |
| ALABAMA STATE SALES TAX | | 565.00 |
| HOUSTON COUNTY SALES TAX | | 141.25 |
| | SUB-TOTAL $ | 28,956.25 |
| CHASE FOR ALABAMA TITLE FEE | | 16.00 |
| CHASE FOR FLOOD FEE | | 12.00 |
| INSURANCE | | 863.00 |
| 1. CASH PURCHASE PRICE | $ | 29,846.25 |
| TRADE-IN ALLOWANCE | $ 0.00 | |
| LESS BAL DUE ON ABOVE | $ 0.00 | |
| NET ALLOWANCE | $ 0.00 | |
| CASH DOWN PAYMENT | 1,449.00 | |
| CASH AS AGREED SEE REMARKS | $ | |
| 2. LESS TOTAL CREDITS | | 1,449.00 |
| | SUB-TOTAL $ | 28,397.25 |
| PREPAID FINANCE CHARGE | | 12.00 |
| 3. UNPAID BALANCE OF CASH SALE PRICE | $ | 28,385.25 |

You and I certify that the additional terms and conditions printed on page 2 of this contract are agreed to as a part of this agreement, the same as if printed above the signatures. I am purchasing the described manufactured home or vehicle; the optional equipment and accessories, the insurance as described has been voluntary; that my trade-in is free from all claims whatsoever, except as noted.

I, OR WE, ACKNOWLEDGE RECEIPT OF A COPY OF THIS ORDER AND THAT I, OR WE, HAVE READ AND UNDERSTAND PAGE 2 OF THIS AGREEMENT

NOT VALID UNLESS SIGNED AND ACCEPTED BY AN OFFICER OF THE COMPANY

SIGNED X _Nick L. Strickland_   BUYER
NICK L STRICKLAND   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   DOB 8/20/73

PALM HARBOR HOME CENTER _____ DEALER

BY _____
                APPROVED

SIGNED X _Jennifer J Hunt_   BUYER
JENNIFER J HUNT   419-17-31   DOB 10/5/89

Page 1 of 2

BINDING ARBITRATION PROVISION

This agreement for binding arbitration is this date entered between Nick L Strickland and Jennifer J Hunt, hereinafter called "buyer" and PALM HARBOR HOME ENTER OF DOTHAN, hereinafter, called "seller".

Buyer has this date purchased from Seller a manufactured home described as follows:

2003        Champion Advantage        AV621        16x76        serial number: 011-03-621-20853

s part of the consideration for the sale of said home, Buyer and Seller hereby enter into this agreement for binding arbitration, each intending to be mutually bound by the terms f this agreement.

Buyer and Seller acknowledge that the said home is a product manufactured and sold in interstate commerce and that the provisions of the Federal Arbitration Act are pplicable to this contract. The parties also acknowledge that the manufacturing and sale involve numerous parties besides the manufacturer and seller such as lenders, mortgages r their assigns, and suppliers of components and transportation, without which the home could not have been manufactured and sold, and which are not located within the state in hich Buyer purchased from Seller. The parties further acknowledge that the sale of the home is a transaction involving interstate commerce.

Buyer and Seller agree, covenant and consent, that any and all controversies, disputes, or claims arising out of or in any way relating to the sale of the home, the egotiations leading up to the sale, or any service of the home, whether in the nature of covenant, warranty, misrepresentation, negligence, rescission, breach of contract, breach of arranty, tort or other claim, shall be settled solely by arbitration in accordance with the applicable Commercial Rules of the American Arbitration Association then in effect, and at judgment upon the award rendered by the arbitrators may be entered in and enforceable by any court of competent jurisdiction. Buyer and Seller covenant and consent that his Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, any person or entity who forms a relationship with the Buyer in connection with the sale f the home.

Buyer and Seller further agree that arbitration can only be initiated in accordance with the applicable Commercial Rules of the American Arbitration Association then in ffect. The arbitration panel shall consist of three arbitrators from the American Arbitration Association's panel of arbitrators. The Buyer shall select the first arbitrator, and the eller shall select the second. Those two arbitrators will then select the third. If the Seller is not a party to the arbitration proceeding, then the selection of the second arbitrator hall be made by the manufacturer of the home. In cases involving neither the Seller nor the manufacturer, the three-person arbitration panel shall be appointed in connection with he applicable Commercial Rules of the American Arbitration Association then in effect. The Buyer and Seller agree that any and all arbitration proceedings arising hereunder hall be held in the county of sale, which is Houston County, Alabama.

The arbitrators shall follow the substantive law that would be binding on an Alabama state court deciding the same dispute, claim, or controversy. The arbitrators shall eliver their opinion in writing, and said written opinion shall expressly state the grounds therefore.

Nothing in this Arbitration Provision prevents any party or beneficiary from seeking an administrative remedy from the State or Federal agency which has jurisdiction ver manufactured housing or relieves anyone from any duty to comply with any order or directive of such Federal or State agency.

Buyer and Seller agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of the manufacturer of the home which is the subject f the Contract of Sale, as fully as if the manufacturer were a signatory to the Contract of Sale. This Arbitration Provision also applies to any affiliate or parent of the manufacturer. Nothing in this contract requires a manufacturer to invoke this Arbitration Provision, and the manufacturer may do so only if it agrees to a final and binding etermination made by the arbitration process.

Buyer and Seller agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of any lender, mortgagee, developer or their assigns who provides financing for the purchase of the home which is the subject of the Contract of Sale. Nothing in this Arbitration Provision requires a lender, mortgagee, developer or ssigns to invoke the Arbitration Provision, and the lender, mortgagee, developer or assigns may do so only if they agree to a final and binding determination by this arbitration rocess.

Buyer and Seller agree that this Arbitration Provision inures to the benefit of and is intended to be for the benefit of PALM HARBOR HOME CENTER OF DOTHAN, ts subsidiaries, affiliates, divisions, and agents, the seller of the home, which is the subject of the Retail Installment Contract, if applicable, as fully as if they were a signatory to he Retail Installment Contract.

Buyer and Seller agree that this Arbitration Provision shall be in force without regard to whether Buyer seeks to become or becomes a representative or member of any lass action litigation.

Buyer and Seller agree that any contests to the validity or enforceability of this Arbitration Provision, or any other part of the Contract of Sale or released ocumentation, will be determined by arbitration in accordance with the terms of this Arbitration Provision.

Buyer and Seller understand they have the right to have any disputes between them decided in court, but they choose instead to waive that right and to have any such isputes decided by arbitration in order to avoid the burden, expense and time of the judicial process.

**BUYER AND SELLER KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.**


_____        Date:  3/8/03

Buyer—Nick L Strickland


_____        Date:  3/8/03

Buyer—Jennifer J Hunt


PALM HARBOR HOME CENTER OF DOTHAN        Date:  3/8/03
Seller

By:   _____
      MICHAEL E. FORTNER
      General Manager


Buyer(s) hereby acknowledge receipt of a copy of this agreement. A copy of the Rules of the American Arbitration Association is available upon request at the office of Seller or may be obtained directly from the Association at the following address:

American Arbitration Association
140 West 51st Street
New York, New York 10020-1203
Telephone (212)-484-4000

Customer Copy

## *ARBITRATION & LIMITATION OF REMEDIES*

**ARBITRATION AND LIMITATION OF REMEDIES:** It is agreed that any controversy, claim or dispute between or among the Manufacturer, homeowner, independent dealer, finance company or any other person or entity arising from or relating to the Manufactured Home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing, insurance, any other condition, the manufacturer's limited warranty, any contract or any alleged promise, representation, agreement or instrument relating to or delivered in connection with the Manufactured Home, or any alleged breach thereof, and any claim based on or arising from an alleged tort or claim of any kind whatsoever, including any claim relating to the validity of this arbitration and limitation of remedies provision [collectively "Claim(s)"], and if the Claim(s) cannot be resolved through direct discussions or negotiations, the Claim(s) first shall be mediated as administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to binding arbitration. Thereafter, any unresolved Claim(s) shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and any judgment on the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. All fees and expenses of the mediation or arbitration shall be borne by the parties equally, unless otherwise agreed in writing. Moreover, each party shall bear the expense of its own counsel, experts, witnesses and other costs, including preparation and presentation of proofs. All mediation or arbitration proceedings shall be conducted in the jurisdiction of the original retail sale or at any other place selected by agreement of all parties.

IT IS AGREED AND UNDERSTOOD THAT THE PARTIES ARE KNOWLINGLY GIVING UP AND WAIVING ANY RIGHT TO TRIAL BY JURY. This arbitration and limitation of remedies provision is part of the manufacturer's limited warranty for the Manufactured Home and shall be binding on and inure to the benefit of the parties' respective heirs and assigns.



9

TOTAL P.02

Strickland-00003